UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| GINA M. CLARY | CIVIL ACTION NO. 05-0324 |
| versus | JUDGE HICKS |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | REFERRED TO: MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

**Introduction**

Gina Clary ("Plaintiff") applied for Disability Insurance Benefits and Supplemental Security Income based on a claim that she became disabled on January 2, 2003 due to left knee pain. Plaintiff has a high school equivalency diploma and past work experience that includes employment as a waitress. She was 47 years old when ALJ Larry Butler denied her claim. The Appeals Council denied Plaintiff's request for review, and Plaintiff filed this civil action seeking the limited judicial review permitted by 42 U.S.C. § 405(g). Both parties filed written consent to have the case decided by a magistrate judge and, pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, this case was referred to the undersigned for decision and the entry of final judgment. For the reasons that follow, the Commissioner's decision to deny benefits will be affirmed.

**Summary of the ALJ's Decision**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in

20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and Section 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). He found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date (step one). He then reviewed the medical evidence and testimony regarding Plaintiff's knee pain and determined that she suffered from severe impairments (step two) in the form of bilateral (knee) osteoarthritis, left greater than right, and morbid obesity. The ALJ did not discuss any particular listing, but he found at step three that Plaintiff's impairments did not meet or medically equal a listing.

The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. A sedentary job involves sitting, but a certain amount of walking and standing is often necessary to carry out job duties. A job is sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a). Social Security Ruling 83-10 explains that a job involves walking and standing "occasionally" if those tasks generally total no more than about 2 hours of an 8-hour workday, with the other six or so hours spent sitting. Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000).

The ALJ found that Plaintiff could not return to her past work as a waitress (step four). He proceeded to step five. The ALJ had specifically determined that Plaintiff had no non-

exertional limitations that impacted her ability to perform sedentary work, so he turned to the Medical Vocational Guidelines to direct a decision. See Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987) (discussing when the Guidelines may be used to direct a step-five decision). Rule 201.21 directed a finding of not disabled for a person of Plaintiff's RFC and other vocational factors.

**Issues on Appeal**

Plaintiff lists three errors in her brief: (1) the ALJ's determination that Plaintiff can perform the full range of sedentary work is not supported by substantial evidence; (2) the ALJ failed to provide specific rationale for rejecting Plaintiff's testimony; and (3) the ALJ failed to find that Plaintiff's knee problems meet or equal the criteria in Listing 1.02.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Medical Evidence**

Plaintiff's weight is reported in various places in the record as being in the 250-300 pound range. She visited the Green Clinic in Ruston in February 2003 and complained of left knee pain that had been ongoing for about two months. Plaintiff reported she had previously seen Dr. Belue, who injected the knee and obtained good, pain-free results for several weeks, but the knee had recently started popping, locking and hurting. Examination by a nurse practitioner found the joint to be stable, but with definite tenderness and pain with motion. Plaintiff was given another injection and prescribed Ultracet. Tr. 86-87.

Plaintiff visited LSU-HSC in April 2003 and complained of left knee pain that was exacerbated with movement. The knee exhibited a full range of motion, but with pain on movement, and weightbearing was normal. An X-ray was ordered, but Plaintiff "deserted" before the X-ray was taken. The diagnosis was arthritis. Tr. 93.

There is a short note by Dr. Charles Werner dated May 12, 2003 that states: "XR B/L knees: Normal." Tr. 88. Plaintiff returned to LSU-HSC in June 2003 and complained of continuing knee pain over the past six months and that her knee cap would pop and hurt. An examination revealed that the joint was not hot and there was no effusion. There was a limited range of motion on this examination, and there was again pain on movement. The X-ray report was: "left knee, degenerative changes noted with B joint space narrowing." The diagnosis was "chondromalcia, DJD [degenerative joint disease]." Plaintiff was released with a prescription for Bextra and with an appointment scheduled for physical therapy. Tr. 99-100.

Plaintiff testified that she went to therapy a few times, but she had trouble attending because she lives sixty miles from Shreveport. Tr. 122. The record appears to contain a report of only one therapy session. Tr. 98.

An MRI of the left knee in December 2003 indicates a "small joint effusion and that the posterior horn of the lateral meniscus was clearly torn." The report also stated that the "ACL is abnormal" and that the ligament "is abnormal at its tibial attachment, and I would query if this intact on physical exam." The full, lengthy report is at Tr. 96. Plaintiff was at one time scheduled for a "knee scope," but the physician later recorded that he did not think surgery would help. Tr. 94-95.

Dr. Robert Holladay IV, an orthopedic specialist, conducted a consultative examination in July 2004. Plaintiff stood 5'8" and weighed 286 pounds. She was able to stand and walk from a chair to the exam table and get on and off the exam table without assistance. She walked with a "very slow guarded gait." She had a walker that she said she had been using for the last year. Both knees had flexion to 115°, and several tests yielded negative results, but a McMurray testing was positive on the left and negative on the right. McMurray's test is a rotation test for demonstrating a torn meniscus. Plaintiff demonstrated moderate joint line tenderness in the left knee, and minimal tenderness in the right knee. There was no effusion in either knee.

Dr. Holladay reported that Plaintiff, in addition to her slow guarded gait, was unable to perform heel and toe gait because of complaints of knee and back pain. Plaintiff had fair

balance. She reported that she walked with her walker "when she walks for lengthy distances." X-rays showed narrowing of the lateral compartment of the left knee, with spur formation and some gas found in the joint laterally. Dr. Holladay reviewed the MRI report and interpreted it to show advanced changes in the left knee with torn meniscus as well as advanced arthritic changes of the left knee. He noted that Plaintiff moaned and groaned throughout the examination, and he suggested that her morbid obesity significantly aggravated the underlying condition.

Dr. Holladay diagnosed morbid obesity and bilateral osteoarthritis of the knees, greater on the left than on the right. He found that Plaintiff was physically capable of sitting for eight hours in an 8-hour work day and could use her upper extremities for grasp, fine manipulation, pushing and pulling, and reaching overhead. He suggested that Plaintiff's biggest difficulty will be that of prolonged standing or prolonged walking. He opined that Plaintiff could stand or walk at least two hours in a work day, but she should avoid steps, stairs, and ladders, and she would require her walker for "long distance walking." She would not require the walker for "short distances of less than 20 feet." Tr. 101-04.

**Issue One: RFC for Sedentary Work**

Plaintiff's attack on the ALJ's assessment of her RFC is limited to the ALJ's finding that Plaintiff has no non-exertional limitations which impact her ability to perform work activity. Tr. 17. Plaintiff argues that she has an inability to stoop that is a non-exertional impairment and would prevent the use of the Guidelines at step five. The agency refers to

stooping as bending the body downward and forward by bending the spine at the waist. Plaintiff points to Dr. Holladay's report regarding flexion and extension of the lumbar spine, which Plaintiff argues indicate she is very restricted in that sense. Plaintiff cites a medical treatise on the issue, but without copies of the relevant pages, the court is unable to review the treatise. The court is also not equipped to reinterpret the medical findings absent a truly glaring issue that would be apparent to a lay person. Dr. Holladay did not diagnose or discuss any stooping problems, and Plaintiff has not pointed to record evidence to indicate that she suggested to Dr. Holladay or another physician, or at all prior to this appeal, that she has a stooping limitation.

In any event, SSR 83-14 (Medical Vocational Rules as a Framework for Evaluating a Combination of Exertional and Non-exertional Impairments) explains that not all non-exertional impairments will significantly narrow the range of work a person can do and, therefore, require testimony from a VE or other source at step five. With respect to bending activities, the Ruling states that stooping and crouching must be done frequently in most medium, heavy and very heavy jobs. "However, to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to 1/3rd of the time, depending on the particular job)." Considering the lack of prior argument that Plaintiff had a stooping limitation, the absence of a specific medical finding that Plaintiff has a stooping limitation, and the agency's finding in SSR 83-14 that stooping is required only occasionally to perform

substantially all of the exertional requirements of most sedentary jobs, the court finds that the Commissioner's decision is supported by substantial evidence in this regard, and remand is not required to further address this issue.

**Issue Two: Credibility Assessment**

The ALJ decided that Plaintiff's "statements regarding her ability to work are not entirely credible in light of the medical records from treating and examining practitioners." Tr. 17. Plaintiff complains that the ALJ did not consider each of seven factors described in the regulations, as discussed in SSR 96-7p. The ALJ did, in that portion of his opinion, point to the conflict between the limitations claimed by Plaintiff and the assessment of Dr. Holladay with respect to Plaintiff's abilities. Plaintiff does not point to any particular testimony that she believes was erroneously discredited or discounted, and she does not articulate any particular prejudice stemming from the ALJ not specifically discussing each of the regulatory factors. She simply complains that it "was not done."

The claimant in Hillman v. Barnhart, 2006 WL 690879 (5th Cir. 2006) made a similar argument. The Fifth Circuit observed that it is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and his determination is entitled to considerable deference. The ALJ had evaluated Mr. Hillman's testimony in light of the objective medical evidence and concluded that it did not support allegations of disabling back pain, but rather indicated an ability to perform a limited range of light work. The Fifth Circuit held that even though the ALJ did not explicitly discuss every factor set forth in the regulations, remand was

not required because the transcript revealed that the ALJ had elicited the pertinent information from the claimant and there was a lack of objective medical evidence to support the degree of pain asserted by the claimant.

The same result is in order in this case, given the lack of suggestion that there is a reason other than a desire for procedural perfection that a remand would serve. Frankly, it is extraordinarily rare that an ALJ's decision that passes through this court includes an assessment of credibility that mechanically follows every aspect of the regulations and agency rulings. If the court were to reverse for such omissions in the absence of a reason to suspect prejudice, almost every case filed in this court would have to be reversed.

**Issue Three: Listing 1.02**

There is no indication that Plaintiff (unrepresented below) argued that she satisfied the requirements of any listing, and the ALJ did not specifically discuss any listing. Plaintiff now argues that she meets or equals the demands of Listing 1.02 (major dysfunction of a joint). The provision of the listing relied upon by Plaintiff states that the dysfunction is:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of a joint space narrowing, bony destruction or ankylosis of the affected joint(s) With:
>
> A. Involvement of one major peripheral weight-bearing joint (*i.e.* hip, knee or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

The referenced provision on the ability to ambulate indicates that a claimant has the inability to ambulate effectively if she has an extreme limitation of the ability to walk. Ineffective

ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities. To ambulate effectively, the person must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. That includes the ability to travel without companion assistance to and from a place of employment or school. An example of ineffective ambulation given in the regulation is the inability to walk a block at a reasonable pace on rough or uneven surfaces. Other examples are also provided.

Dr. Holladay's finding that Plaintiff could not walk more than about 20 feet without her walker supports Plaintiff's argument that she satisfies the ambulation component of the listing. But Plaintiff has not pointed to specific medical findings of a gross anatomical deformity or other physical condition that would satisfy the burden she bears at step three of showing she satisfies the initial requirement of the listing. Plaintiff has been examined and treated for knee pain on a few occasions, and she undeniably has knee pain, but Dr. Holladay's report is not indicative of the degree of major dysfunction that would require the court to reverse the Commissioner's decision and remand this case for a reassessment of the listing.

**Conclusion**

Plaintiff has presented good arguments that, if presented to the agency, might have persuaded the ALJ to find in her favor. But the ALJ has now made his decision, and it is not

subject to judicial reversal absent a legal error or absence of substantial evidence. Reasonable minds might differ on the interpretation of some of the evidence, but the conclusion reached by the ALJ is supported by substantial evidence and must be affirmed. A judgment will be entered accordingly.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 15th day of May, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE